## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE MUNICIPALITY OF SAN JUAN AND HONORABLE CARMEN YULIN CRUZ-SOTO IN HER OFFICIAL CAPACITY AS MAYOR OF SAN JUAN<br><br>     Plaintiffs<br><br>v.<br><br>THE CENTER FOR DISEASE CONTROL AND PREVENTION; TOM FRIEDEN IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE CDC; THE COMMONWEALTH OF PUERTO RICO; GOVERNOR OF PUERTO RICO, HONORABLE ALEJANDRO GARCÍA-PADILLA, SECRETARY OF THE DEPARTMENT OF AGRICULTURE HONORABLE MYRNA COMAS; HEALTH DEPARTMENT SECRETARY HONORABLE ANA RIUS-ARMENDARIZ; CORPORATION A, B, C, JOHN DOE, JANE DOE.<br><br>    Defendants. | CIVIL NO.:<br><br><br><br><br><br>**PLAINTIFFS DEMAND TRIAL BY JURY** |

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW the Plaintiffs through their undersigned attorneys who STATE, ALLEGE and PRAY:

## I. INTRODUCTION

1.1    This action is a "citizen suit" brought under Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. §1536, its citizen suit provision found at 16 U.S.C. §1540(g)(1)(A) seeking relief from defendants' intended actions which will pose a significant risk to the well-being of several species of fish, wildlife and plants.

1.2   This action is also brought pursuant to the National Environmental Policy Act (NEPA) to prevent defendant The Center for Disease Control and Prevention (hereinafter "CDC") to implement its plan to carry aerial spraying within the San Juan territorial jurisdiction and across Puerto Rico without first complying with environmental laws and regulations. 42 U.S.C. § 4332(C).

1.3   Plaintiffs seek injunctive relief, declaratory relief and costs including reasonable attorney's fees.

## II. STATEMENT OF JURISDICTION

2.1   This action arises under laws of the United States, the ESA, 16 U.S.C. §1540(g)(1)(A) and the NEPA, 42 U.S.C. § 4332(C).

2.2   Jurisdiction over the federal claims is conferred on this Court by 28 U.S.C. § 1331. Venue lies in this Court pursuant to 28 U.S.C. §1391(b) on the basis that the Plaintiffs' claims arise within the judicial district of Puerto Rico.

## III. THE PARTIES

3.1   Plaintiffs Municipality of San Juan ("MSJ") and its Mayor, Carmen Yulín Cruz-Soto ("Cruz-Soto") (hereinafter also collectively referred to as the "Plaintiffs") are a legal entity based in San Juan Puerto Rico, and its Mayor Cruz-Soto is a resident of San Juan and the highest level elected official for the Municipality. Within the territorial confines of the MSJ are located several estuaries, navigable waters and ecological preserves that will suffer irreparable damage if the challenged action is undertaken by the defendants. Both have standing to sue under the clear language of the ESA and NEPA.

3.2   Plaintiffs are all "citizens" and "persons" within the meaning of the "citizen suit" provisions of ESA.

2

3.3   The quality of the multiple waterways and the San Juan estuary systems, as well as the safety of wildlife and fish that inhabit said ecosystems and bodies of water directly affects the health, recreational, aesthetic, commercial and environmental interests of the MSJ.   The interests of the MSJ are being and will be adversely affected by defendants' failure to comply with ESA and NEPA requirements.

3.4.   The Center for Disease Control and Prevention, ("CDC") is a Federal Government Agency, who by information and belief, will issue contract for, operate and/or carry-out aerial spraying of several toxic compounds, included but not limited to Dibrom® Concentrate, also known as Naled and Naphtalane. The aerial spraying of the aforementioned toxic compounds is reasonably expected to take place in San Juan and throughout Puerto Rico.

3.5.   The Commonwealth of Puerto Rico is a United States territory and thorough its agencies will supervise, participate and/or assist in a meaningful manner and form in the aerial spraying of the aforementioned toxic compounds in San Juan and throughout Puerto Rico.

3.6.   Honorable Alejandro García Padilla, Honorable Mirna Comas and Honorable Ana Rius-Armendariz are respectively the Governor of Puerto Rico, the Secretary of the Commonwealth's Department of Agriculture and the Secretary of the Commonwealth's Health Department. All of them are sued in their official capacities.

3.7   All named and unnamed defendants are responsible for complying with the provisions of the ESA and NEPA and are a "person" within the meaning of both statutes.

3.8   Unknown named defendants Corporation A, B, and C and individual unknown named defendants John Doe and Jane Doe, as well as similarly situated corporations and/or individuals, are responsible for the acts alleged in the instant complaint whose identities are unknown at the time of filing this Complaint.

3

### IV.  FACTS COMMON TO ALL CAUSES OF ACTION

4.1     On June 23, 2016 the appearing party was summoned to a meeting held in the Municipality of San Lorenzo by the Puerto Rico State Agency for Disaster and Emergency Management (AEMEAD, for its acronym in Spanish).  The purpose of the meeting was not clearly stated but the main topic was to discuss implementation of measures to control the spread of the Zika Virus, thru the control of the mosquito population throughout Puerto Rico.

4.2     A. Representative of the MSJ, as well as other municipalities and governmental agencies attended said meeting.  During the meeting official representatives of the CDC informed that in consideration of the spread of the Zika Virus in Puerto Rico, they had determined to commence immediately with the delivery of the chemical Naled and other chemical compounds, thru the use of aerial spraying in Puerto Rico, including San Juan.

4.3.     The San Juan Municipality's representative, Mr. Nazario Lugo, and most of the representatives of the municipalities at said meeting objected to the use of Naled within their territorial jurisdictions to which the CDC representative responded that the CDC will carry-out the aerial spraying with or without the consent and cooperation of local authorities.

4.4     The objections to the use of Naled are based on multiple studies that demonstrate that exposure to Naled can cause respiratory complications, nausea, headaches, skin irritation, damage to the nervous systems, among other complications. In essence, Naled and other toxic pesticides that the defendants proposed to use (hereinafter the "proposed action") represent a serious risk to the general health of the People of San Juan and a danger to the environment as further explained in detail hereinafter.  This has been so stated by former EPA Director.

4.5     As a result of the widespread opposition to the indiscriminate use of Naled and other toxic chemicals, the Legislature of Puerto Rico held public hearings to discuss and expose the effects of aerial spraying of the aforementioned toxic compounds.

4.6     During said public hearings, some of the defendants and their representatives advised that they will cooperate, participate and/or carry out the aerial spraying with the CDC. Most of the deponents stated that the aerial spraying will commence at any time within the next days and that such spraying will include the territorial jurisdiction that comprises the MSJ.

4.7     It has been confirmed by local government officials that during the last 24 hours the CDC has transferred a significant amount of Naled to the jurisdiction of Puerto Rico and thus there is an imminent possibility that the CDC will carry out the aerial spraying of Naled at any time with or without Governor Padilla's express consent.

4.8     Accordingly, the commencement of the aerial spraying operation by the CDC, in coordination, cooperation and/or silent acceptance may commence at any time creating an imminent and irreparable harm to the MSJ, its people, flora and fauna. Therefore, the violations to the ESA andNEPA are posed to occur with minimal warning increasing the danger to the waterways, estuaries, fish and wildlife in San Juan and throughout Puerto Rico. Specifically, the NEPA requires an environmental impact statement ("EIS") for actions "significantly affecting the quality of the human environment", like the proposed action, and neither the CDC nor any other federal and/or state agency involved has complied with said requirement.

4.9     The waterways located within the Municipality of San Juan, including but not limited to the San Juan Estuary and the San Juan Bay area, including their tributaries and wetlands are "waters". The endangered fish and wildlife that inhabit said waters are protected under the ESA.

5

4.10   The defendants plan to apply Naled to these protected waters, fish and wildlife without any consideration to the devastating effects to several protected species that inhabit in such waters and surrounding wetlands.

4.11   Naled is an organophosphate insecticide manufactured by AMVAC Chemical Corporation which is recognized as acutely toxic both orally or by inhalation; is carcinogenic and extremely hazardous with long lasting effects to the aquatic environment.

4.12.   Naled is also hazardous to humans as it is toxic, causes serious eye damage, is harmful if inhaled and may cause skin irritation. Also, there have been recent findings linking the presence of organophosphates and behavior problems in babies whose mothers were exposed to this type of chemical during their pregnancy. Also, gestational exposure to several common agricultural pesticides that contain organophosphates, such as Naled can induce developmental neurotoxicity in humans, and has been associated with developmental delay and autism.   As such CDC' local spokesperson advised, in a radio interview, that he agreed with the P.R. Department of Health's advisory that pregnant women and asthma sufferers must remain inside while spraying surely exposing the possible effects from direct exposure.

4.13.   Naled is also hazardous to animals and is toxic to fish, birds and wildlife. Naled is known to eradicate bees, affect birds, aquatic life and will most probably eradicate or severely cripple amphibian wildlife.

4.14.   Naled is well known to carry harmful effects to bodies of water due to runoff from treated areas or deposition of spray droplets into a body of water. Naled label requires for it to be kept out of any body of water and specifically states for it not to be used over bodies of waters, including marshes and estuaries, particularly if weather conditions will not permit

6

movement of the applied material away from water to minimize incidental deposition into the water body.

4.15.    At this time none of the defendants or their agents have carried out any tests, methodological studies to determine and mitigate the long term harm that the aforementioned waters, human and wildlife will suffer if Naled is indiscriminately used as pretended by the CDC and the other defendants. Furthermore they have not provided any alternatives to the proposed action since they have not provided the EIS as required by the NEPA nor a biological assessment as required by ESA.

4.16.    Within San Juan and Puerto Rico a significant number of endangered and/or threatened species coexist.    The appearance of such species in the MSJ, which will be irremediably harmed with the use of Naled, include but are not limited to the following: The Brown Pelican (*Pelecanous Occidentalis*); Puerto Rican Plain Pigeon ("Paloma Sabanera" or *Columba Inomata* Wetmorei); Yellow-shouldered blackbird ("Mariquita" or *Agelaius* Xanthomus); Puerto Rican Rock Frog ("Coquí Guajon" or *eleutherodactylus cooki)*; Puerto Rican Crested Toad ("Sapo Concho Puertorriqueño" or *Peltophryne lemur)*; Golden coqui ("Coquí Dorado" or *Elutherodactylus jasper)*; Coquí Llanero (*Eleutherodactylus* juanariveroi); West Indian Manatee ("Manatí Antillano" or *Trichechus manatus).*  Palo de Ramón (*Banara vanderbiltii*), Diablito tres cuernos (*Buxus vahlii*), Capa rosa (*Calliparca ampla*), Palma manaca (*Calyptronoma rivalis*), Matabuey (*Goetzea elegans*), Palo de Nigua (*Cornutia obovata*), Higuiro de Sierra (*Crescentia portorricensis*), Uvillo (*Eugenia haematocarpa*), Higo chumbo (*Harrista portorricensis*), Nogal de Puerto Rico (*Juglans jamaicensis*), Palo de rosa (*Ottoschulzia rhodoxylon*), Cobana negra (*Stahlia monosperma*), Boa puertorriqueña (*Chilabothrus inornatus*), Mariquita (*Agelaius xanthomus*), Peje blanco (*Chelonia mydas*), Carey

7

(*Eretmochelys imbricate*), Tinglar (Dermochelys coriácea), Pelícano pardo (*Pelecanus occidentalis*), cuerno de arce (*Acropora palmata*) and *Schoepfia arenaria*, among others.

4.17   Within the territory of San Juan and particular within the San Juan Estuary, San Juan Bay and Arboretum Doña Inés Park, many of the aforementioned species have been observed. In addition, numerous protected plan species are found and at least one specimen of the Puerto Rican Boa, *Chilabothrus inornatus* has been observed. (See attached List of Protected Species found at Arboretum Doña Inés Park, Exhibit 3, USFWS Threatened and Endangered Species List, Exhibit 4).

4.18.   The aerial spraying of the target areas will cause irreparable harm to the aforementioned endangered or threatened wildlife  Accordingly, this will cause irreparable harm to the MSJ, its citizens and all citizens of Puerto Rico.

4.19   Due to Naled's high toxicity, its undisputed effects on fish, wildlife and particularly invertebrates; coupled with defendants' gross indifference to NEPA and ESA statutory, regulatory and procedural requirements, there is a strong likelihood that the Plaintiffs will prevail on the merits of their claim.

4.20   Furthermore, the aforementioned facts clearly shift the balance of equities in plaintiffs' favor and the public interest is well served by the issuance of an injunction in this case.

4.21   Given the high level of toxicity of Naled and its morbidity on wildlife, particularly endangered species, the course of action proposed by the defendants is an action that significantly affects the quality of the human environment, as defined by law and regulation.

4.22   Notwithstanding all of the above, and considering the serious environmental impact of the island wide fumigation with toxic chemical on urban and rural areas, as of today

8

the CDC has not complied with NEPA or ESA and has failed to produce the required environmental impact statement or biological assessment.

4.23 The CDC has failed to prepare or provide the required EIS for the only purpose of hiding from the public the potential environmental consequences of its proposed action, thus depriving the public of its statutory right to sufficient detailed information concerning the environmental impact of the CDC's proposed action and violating NEPA'S purpose to promote informed decision-making by federal agencies by making detailed information concerning significant environmental impacts available to both agency leaders and the public.

4.24 Defendants, have also failed to comply with NEPA's requirement of the preparation of an EIS prior to any action significantly affecting the quality of the human environment, as defined by law and regulation. They have also failed to comply with ESA's requirement of the preparation of a biological assessment of the area being affected by the proposed action.

4.25 If the CDC and other defendants are allowed to carry out the island wide aerial spraying of Naled and other toxic chemical compounds within San Juan territorial demarcation and waterways, the MSJ will irreparably suffer: a) inherent damages to its natural resources, b) deprivation of access to clean and safe waterways, c) commercial and economic damages as a result of necessary mitigation that will be necessary but not compensated by defendants and d) irreparable damage to endangered or threatened species.

4.26 The aforementioned injury is imminent.

4.27 The aforementioned damage is fairly traceable to the challenged conduct as if the action is stopped none of the described injury will occur.

9

4.28    Given defendants' failure to comply with the ESA and NEPA, there is no other adequate remedy, only an injunction to be issued as to the proposed action could protect the MSJ and its citizen's rights to their recreational interest in the land object to the proposed action, as well as their inherent interest in protecting endangered and threatened wildlife.

## V. FIRST CAUSE OF ACTION
### (ESA-Citizen Suit)

5.1    Plaintiffs reallege as if fully set forth in this claim all of the facts alleged in paragraphs 1.1 thru 4.25, both inclusive.

5.2    The ESA provides for the listing of species as threatened or endangered. The Secretary of Commerce is responsible for listed marine species and administers the ESA through the National Marine Fisheries Service ("NMFS"). The Secretary of the Interior is responsible for listed terrestrial and inland fish species and administers the ESA through the U.S. Fish & Wildlife Service ("FWS"). 16 U.S.C. §1533.

5.3    Both NMFS and FWS have listed numerous species of wildlife as endangered or threatened within the territory and waterways comprised within the MSJ and throughout Puerto Rico.

5.4.    The ESA requires that any Federal agency shall, insure that any action authorized, funded or carried out by such agency **is not likely to jeopardize the continued existence of any endangered or threatened species**.

5.5    Furthermore, ESA's core protection prohibits the "take" of a protected species by any person. 16 U.S.C. §1538(a). As construed, "take" include acts that "harm" individual

10

protected organisms, including such harm caused by toxic contamination of their habitat. 16 U.S.C. §1532. This prohibition applies to all defendants in this case.

5.6     The CDC as well as the individual defendants act in clear violation of the ESA as their proposed action will cause harm to individual protected organisms that currently exist within the territorial demarcation and waterways of the MSJ and throughout Puerto Rico. Defendants' proposed action will impact the individual protected organisms' habitat and severely impact their population.

5.7     The proposed action is intended without consideration to the irreparable environmental damage that will be caused.

5.8     The ESA requires that if the agency action may affect any endangered species, the acting agency must formally consult with the federal agency responsible for protection of the species in question. 16 U.S.C. §1536(a), (b); 50 C.F.R. § 402.14(a). Here, the CDC has failed to comply with this legal requirement as to its proposed plan of action.

5.9     The ESA requires that any agency action which may incidentally "take" a threatened or endangered species requires the issuance of an incidental take statement ("ITS"). Such ITS shall specify the impact of the incidental taking and reasonable and prudent measures (RPMs), which if followed, exempt the action agency from liability under the ESA. 16 U.S.C. § 1536(b)(4). In the above captioned case the CDC has failed to comply with this legal requirement as to its proposed plan of action.

5.10    The ESA § 7(c), 16 U.S.C. § 1536(c), states that a biological assessment must be completed by the acting agency if the Secretary advises the acting agency that an endangered or threatened species may be present in the area affected by the proposed agency action. Said assessment has not been made by any of the defendants.

11

5.11    The ESA authorizes citizen suits "to enjoin any person… who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 USC §1540(g). As the defendants in this case are in violation and/or will imminently be in violation of the ESA, this Honorable Court should enjoin from causing any harm to protected species inhabiting the territorial demarcation and waterways of the MSJ and throughout Puerto Rico.

5.12    Accordingly, Plaintiffs are entitled to relief for defendants' clear violation of the Endangered Species Act.

## VI. SECOND CAUSE OF ACTION
### (NEPA)

6.1    Plaintiffs reallege as if fully set forth in this claim all of the facts alleged in paragraphs 1.1 thru 5.9, both inclusive.

6.2    NEPA requires that "to the fullest extent possible all agencies of the Federal Government shall" complete an EIS in connection with "every recommendation or report [for any] major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. §4332(2)(C).

6.3    CDC's plan to commence aerial spraying of Naled and other toxic compounds within the territorial demarcation and waterways of the MSJ and throughout Puerto Rico is a major Federal action that could significantly affect the quality of the human environment in the MSJ and Puerto Rico.

6.4    The CDC and other Federal Government agencies involved in this proposed action have failed to undertake any scientific studies prior to the execution of the proposed action

and have not completed the required EIS.  These agencies have not prepared an environmental assessment (EA) nor they have issued a finding of no significant Impact (FONSI) as required by 40 CFR §§ 1501.4(a)-(c) and (e), 1508.9 and 1508.13.

6.5     This Honorable Court has jurisdiction to enjoin any further action on the proposed action until Federal agencies promptly and fully complies with NEPA requirements, particularly when their proposed action will have significant environmental impact in violation of ESA.

6.6     Accordingly, Plaintiffs are entitled to relief for defendants' clear violation of the National Environmental Protection Act.

## VII. REQUEST FOR RELIEF

WHEREFORE, the PLAINTIFFS respectfully request from this Honorable Court that it grants the following relief:

1.     Declare defendants to be in imminent violation of the ESA and NEPA and temporarily and permanently enjoin defendants from carrying out the proposed action of aerial spraying of Naled in San Juan territorial waterways, estuary systems and any other place within the municipality.

2.     Award plaintiffs costs, including reasonable attorney, expert witness and consultation fees as authorized by Law.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of July, 2016.

13

| | |
|---|---|
| S/Raul S. Mariani Franco<br>RAUL S. MARIANI FRANCO<br>USDC-PR NO.: 210309<br>P.O. BOX 9022864<br>SAN JUAN, PR 00902-2864<br>Tel.: (787) 620-0038<br>Fax: (787) 620-0039<br>marianifrancolaw@gmail.com | S/Cenia M. Mercado Santana<br>CENIA M. MERCADO SANTANA<br>USDC-PR NO.: 231401<br>1686 SAN COSME<br>URB. SAN IGNACIO<br>SAN JUAN, PR 00927<br>Tel. (787)568-3822<br>ceniamercado@gmail.com |

14